IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TIYANA M. | : |
| v. | : NO. 25-CV-1929 |
| FRANK BISIGNANO,<br>Commissioner of Social Security | : |

**O P I N I O N**

SCOTT W. REID  DATE:  January 20, 2026
UNITED STATES MAGISTRATE JUDGE

Tiyana M. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I recommend that Tiyana M.'s Request for Review be granted in part, and the matter remanded for review by a rheumatologist of the records pertaining to her fibromyalgia.

I.  *Factual and Procedural Background*

Tiyana M. was born on July 21, 1979.  Record at 202.  She completed three years of college.  Record at 240.  She worked in the past as a mental health aide and technician.  *Id*.  On December 10, 2021, Tiyana M. completed an application for DIB and SSI, alleging disability since December 2, 2021, as a result of Sjogren's syndrome[1], fibromyalgia, high blood pressure, depression and anxiety.  Record at 202, 239.

---

[1] Sjogren's syndrome is an immune-mediated disorder of the exocrine glands, "resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough."  20 C.F.R. Part 404, Subpart P, Appendix 1 at §14.00D7a.

Tiyana M.'s application for benefits was denied on May 27, 2022. Record at 76, 101. It was denied again upon reconsideration on December 22, 2022. Record at 115, 129. Tiyana M. then requested a hearing before an Administrative Law Judge ("ALJ"). Record at 132.

A hearing was held in this matter on January 18, 2024. Record at 41. On May 14, 2024, however, the ALJ issued a written decision denying benefits. Record at 14. The Appeals Council denied Tiyana M.'s request for review on March 5, 2025, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1. Tiyana M. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we

2

>also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

>(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.  *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ determined that Tiyana M. suffered from the severe impairments of Sjogren's syndrome, osteoarthritis, asthma, hypertension, fibromyalgia, a depressive disorder, an anxiety disorder, and posttraumatic stress disorder ("PTSD").  Record at 16.  He found, however, that none of her impairments, and no combination of impairments, met or medically equaled a listed impairment.  Record at 16-19.  The ALJ found that Tiyana M. retained the RFC to engage in light work with the following limitations:

>[S]he can frequently handle and finger with both hands; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; and can never climb ladders, ropes, or scaffolds.  She can tolerate occasional exposure to unprotected heights, moving mechanical parts, humidity, wetness, extreme heat and cold, dust, odors, fumes, and pulmonary irritants.  She is able to perform simple, routine, and repetitive tasks that are not done at a production rate pace (e.g., assembly line work) and is able to make simple

3

work-related decisions. Finally, she can tolerate occasional interaction with supervisors, co-workers, and the public and is able to tolerate few changes in a routine work setting, which is defined as occurring occasionally.

Record at 19.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Tiyana M. could not return to her previous work, but could work as a router, routing clerk, or marker. Record at 31. He decided, therefore, that she was not disabled. *Id*.

In her Request for Review, Tiyana M. maintains that the ALJ erroneously failed to consider the consistency and supportability of evidence from consulting independent examiner, Monique Slade, N.P. Further, she argues, the ALJ's evaluation of her subjective reports of her symptoms was not supported by substantial evidence.

IV.   *Discussion*

    A.   *Nurse Slade*

Monique Slade, N.P., an independent consulting medical expert, examined Tiyana M. on November 19, 2022. Record at 2070. She diagnosed Tiyana M. with fibromyalgia, degenerative joint disease, and hypertension. Record at 2073. Upon physical examination, Nurse Slade found that Tiyana M. had a slow-paced gait, but was able to walk without an assistive device. Record at 2072. Her joints were normal in appearance, and she had a negative straight leg raising test. Record at 2073. The strength in her upper and lower extremities was mildly reduced to 4/5, with no muscle atrophy. *Id*. However, she had positive bilateral trigger points in her knees, trochanter, gluteals, lateral epicondyle, trapezius, and occiput. *Id*. Decreased hand and finger dexterity was also noted, with difficulty in zipping, buttoning and tying. *Id*.

Nurse Slade found that Tiyana M. could lift and carry up to ten pounds occasionally, and could never lift or carry any heavier weight. Record at 2074. She could sit for an hour at a time for a total of eight hours in an eight-hour workday, but could stand and walk for only one to two hours total. Record at 2075. She could reach, handle, finger, and feel occasionally, with either upper extremity. Record at 2076. Nurse Slade attributed these limitations to a decreased range of motion in the lumbar spine, neuropathy of the hands, and a loss of dexterity. *Id*. She also indicated that Tiyana M. could engage in occasional postural activities, which she attributed to joint pain, and a decreased range of motion in the shoulders, knees, ankles, and feet. Record at 2077-8. She further indicated that Tiyana M. could not engage in activities like shopping, could not use public transportation or climb a few steps with a handrail, and she could not sort, handle, or use paper files. Record at 2079.

The ALJ found Nurse Slade's assessment "somewhat persuasive," since it was "completed following an in-person examination of the claimant." Record at 29. However, after setting forth some of Nurse Slade's normal examination results, he wrote, "the limitations assessed appear to be based largely on the claimant's subjective complaints rather than the largely normal findings noted during the clinical examination." *Id*.

The undersigned agrees with Tiyana M. that this discussion of the supportability of Nurse Slade's opinion is not grounded on substantial evidence. The ALJ found that Tiyana M. suffered from the severe impairment of fibromyalgia, a syndrome characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues. SSR 12-2p. Fibromyalgia patients often "manifest normal muscle strength and neurological reactions and have a full range of motion." *Henderson v. Astrue*, 887 F. Supp. 2d 617, 634-5 (W.D. Pa. 2012), *quoting Rogers v. Commissioner of Social Security,* 486 F.3d 234, 244 (6th Cir. 2007).

Therefore, it was illogical for the ALJ to dismiss Nurse Slade's finding of limitations on the basis that it was based largely on painful trigger points. Record at 29. Indeed, it has been noted in similar cases that "[t]he problem with looking for independent findings and observations is that fibromyalgia is a disease which is notable for its lack of objective diagnostic techniques." *Emily K. v. Dudek*, No. 3:22-CV-3279, 2025 WL 762688, at *10 (D.N.J. Mar. 11, 2025), *quoting Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005).

Accordingly, these courts have concluded that it is erroneous for an ALJ to rely on the lack of objective evidence to reject a medical opinion involving a diagnosis of fibromyalgia. *Emily K.*, *supra*; *Henderson*, *supra*, at 887 F. Supp.2d at 636. In *Emily K.*, the District Court for the District of New Jersey recently concluded that an ALJ's rejection of a doctor's opinion on fibromyalgia was unsupported by substantial evidence where it lacked a citation to specific treatment records contradicting the opinion. 887 F. Supp.2d at 636.

As in *Emily K.*, the ALJ here did not cite treatment records contradicting Nurse Slade's opinions. In fact, as Tiyana M. points out, the required discussion of the consistency of Nurse Slade's opinion with the rest of the medical record is absent. *See* 20 C.F.R. §§404.1520(c)(b)(2), 416.920c(b)(2).

Upon review, the record reveals that Tiyana M. made consistent complaints of joint pain and body aches, some considerably prior to her December, 2021, application for benefits. On October 27, 2020, she told Jefferson Rheumatology that she had been suffering for months from fatigue and pain in all her "joints and muscles," particularly her legs: "sometimes she cannot move." Record at 1188-9. It was noted: "presentation most consistent with greater trochanteric pain syndrome/fibromyalgia instead of inflammatory arthritis." Record at 1193. This was despite a normal physical examination. Record at 1191.

Similarly, on January 26, 2021, Jefferson Rheumatology described Tiyana M. as suffering from "abdominal pain, arthralgias, fatigue and myalgias." Record at 1218. In February, 2021, her rheumatologist switched her from Cymbalta to Celebrex, specifically to treat fibromyalgia. Record at 1067. At this point, Tiyana M. was still employed, but she reported on July 7, 2021, that once or twice in a week her pain prevented her from working. Record at 1083. Thus, the rheumatology notes were consistent with Nurse Slade's opinion that Tiyana M. was functionally limited by fibromyalgia.

Of course, this does not mean that Tiyana M.'s fibromyalgia diagnosis automatically entitles her to a finding of disability. An ALJ must ensure that there is sufficient evidence to support a finding that a claimant's fibromyalgia so limits her functional abilities that it precludes work. SSR 12-2p. However, it means that the ALJ's dismissal of Nurse Slade's opinions because they relied on findings of painful trigger points was inadequate.

Further, it should be noted that Tiyana M.'s blood test results showed positive ANA which indicates the presence of an autoimmune disorder. Record at 1189, 2832. It is not clear whether this is solely related to her Sjogren's diagnosis, or whether it could be relevant to her claims of joint and muscle pain. It could be related to her October 18, 2022, diagnosis by Jefferson Rheumatology as having an "undifferentiated connective tissue disease." Record at 2932.

Finally, it is unclear why the ALJ did not impose any limitation on Tiyana M.'s use of her hands, given Nurse Slade's objective finding of decreased hand and finger dexterity, with difficulty in zipping, buttoning, and tying. The vocational expert testified that a limitation to only occasional handling, fingering, and feeling could be work-preclusive. Record at 71.

As a whole, therefore, the ALJ's assessment of Nurse Slade's opinions was not supported by substantial evidence. Therefore, the matter will be remanded to the agency for review of the medical records pertaining to Tiyana M.'s fibromyalgia by a rheumatologist, who can then offer an opinion as to how much, and in what way, Tiyana M.'s autoimmune conditions, including fibromyalgia, would have limited her functioning in the relevant time period. The ALJ shall then issue a supplemental decision, or amend his decision, in accordance with this new evidence.

B.      *Tiyana M.'s Subjective Representations*

Upon remand, the ALJ should reevaluate Tiyana M.'s subjective claims, both in her hearing testimony, and in her Adult Function Report, in light of the new medical opinion evidence obtained from a rheumatologist.

V.     *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be granted in part and the matter remanded to the Agency for review of the relevant medical records by a rheumatologist, followed by the issuance of a supplemental or amended decision by the ALJ.

BY THE COURT:

/s/ Scott W. Reid

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE